765 So.2d 423 (2000)
STATE of Louisiana
v.
Richard HUGHES.
No. 99-KA-2554.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 2000.
*424 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant-Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN, and Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.

STATEMENT OF CASE
Richard Hughes was charged by bill of information on December 10, 1997, with possession of crack cocaine, a violation of La. R.S. 40:967. At his arraignment on December 15, 1997, he pled not guilty. A motion hearing was held on January 5, 1998, during which the trial court found probable cause, and denied the motion to suppress the evidence. That same day Hughes withdrew his plea of not guilty, and entered a guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On September 25, 1998, the court sentenced Hughes to three years at hard labor.

STATEMENT OF FACT
Officer Lionel Parker testified that he and his partner were on routine patrol in an unmarked police vehicle in the Second District at approximately 3:30 p.m. on September 1, 1997. As the officers approached the intersection of Olive and General Ogden Streets, the officers noticed three male subjects standing in front of a grocery store. When the officers were about seven to eight feet from the male subjects, they observed Hughes put a white object into his pants pocket and hurriedly enter the grocery store. The officers followed Hughes and detained him. *425 They patted him down and retrieved a plastic bag containing a rock-type substance which later proved to be cocaine.

ERRORS PATENT
Counsel assigns as an error patent the trial court's failure to inform Hughes at sentencing of the prescriptive period for post-conviction relief under La.C.Cr.P. art. 930.8 C. In State ex rel. Glover v. State of Louisiana, 93-2330 (La.9/5/95), 660 So.2d 1189, the Supreme Court held that the trial court's failure to notify the defendant at the time of sentencing of the prescriptive period for filing a post-conviction relief application did not bestow an enforceable right upon the defendant. Therefore, we find no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In his only assignment of error, Hughes argues that the trial court erred in denying his motion to suppress the evidence. He contends that the officers did not have reasonable cause to conduct a stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Hughes argues, in the alternative, that if there was a valid Terry stop, the officer exceeded the legal limits of a pat down search and the seizure of the crack cocaine was illegal.

DISCUSSION

The Stop
A temporary stop by a police officer of a person in a public place is authorized by La.C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). As this court noted in State v. Clark, 612 So.2d 232, 233-234 (La.App. 4th Cir.1992), quoting from Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, [483 So.2d 1207 (La.App. 4th Cir.1986), writ den. 488 So.2d 197 (1986)]. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
In State v. Ellington, 96-0766 (La.App. 4th Cir.9/4/96), 680 So.2d 174, this court affirmed a judgment granting a motion to suppress. In that case the police officer testified that he saw the defendant standing in an area known for high drug activity, and, upon seeing the marked police car, the defendant put his hands in his pocket as if attempting to conceal something. Thinking that this activity was suspicious and that the defendant was trying to conceal something in his pocket, possibly drugs, the officer stopped the defendant and conducted a patdown search. A folding knife was found in the defendant's right rear pants pocket. The officer then shined a flashlight into the same pocket and found a glass vile containing cocaine residue. This Court found that these facts were not sufficient to justify the stop of the defendant. This Court noted that the officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object, which the defendant attempted to conceal. Further, this Court stated that even if the initial stop was justified, the subsequent pat-down frisk of the defendant was not because La.C.Cr.P. art. 215.1 only allowed a frisk of outer clothing for a dangerous weapon. Since *426 the officer did not testify to any particular facts from which he could reasonably infer that the defendant was armed and dangerous, this court held that the patdown frisk was not justified.
Likewise, in State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993), the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away." The officers also saw him "fooling with his belt area." The trial court denied the defendant's motion to suppress the pipe the officers seized after the defendant was stopped and frisked, but this court reversed the trial court's ruling. This Court found that these facts did not justify the initial stop of the defendant, and even if the stop was legal, the officers provided no evidence to justify the subsequent pat-down frisk.
Similarly, in State v. Dappemont, 98-0446 (La.App. 4th Cir. 3/17/99), 734 So.2d 736, the defendant was standing in the courtyard of the St. Bernard Housing Project. When he saw the police officers, he walked away and placed his hands into his waistband area. The officers stopped him and ordered him to remove his hands. When he did so, the officers noticed a white piece of paper protruding from his zipper area. The officer conducted a patdown search, and discovered a bulge where the paper was sticking out. He removed the bulge and found a red, white and blue bag containing marijuana. This Court affirmed the trial court's ruling suppressing the evidence, noting that there was no testimony that the officer saw the defendant engaged in drug activity or that he saw the defendant attempt to conceal a suspicious object. Moreover, there was no testimony by the officer that placing the hands in the waistband was a common practice indicating drug activity; rather, it appeared the officer's suspicion was a result of the way Hughes looked.
In this case, Officer Parker testified:
Q. What first drew your attention to Mr. Hughes that date?
A. While on patrol in the Second District myself and my partner which (sic) was driving up Olive approaching General Ogden. At that time we observed approximately three subjects. We was (sic) in an unmarked car. After we approached in front of a supermarket, we observed Mr. Hughes with a white object placing it into his left pocket. And then he hastily rushed into the supermarket. At that time myself and my partner exited the vehicle, went into the store right behind him. We located in his left pocket a plastic bag containing a rock-type substance.
Q. Okay. Now, when you said you saw Mr. Hughes placing a bag into his pocket, did you have a clear view of that?
A. Yes, ...
Q. When you went into the store, what is the first thing that you did?
A. We went in the store, detained Mr. Hughes. At the time a pat-down search was conducted on him. And the plastic bag was found in right front pocket.
Under cross-examination the officer stated:
Q. You hadn't known Mr. Hughes before that time in any criminal fashion?
A. No.
Q .... you indicated in your testimony and in your police report that you saw him put a white object in his pocket; is that correct?
A. Correct.
Q. Not white bag, white object?
A. It was a white object ...
Q .... other than being suspicious as to that you had no objective knowledge that that was drugs at the time?
A. Just from my 19 years of police experience.
Q. But it's fair to say that a white object could have been a grocery list?
A. Yes, sir. It could have.
Thus, the only reasons the officer stated for stopping Hughes were that he *427 put a white object into his pants pocket and hurriedly entered a grocery store. There was no testimony that the area where the officers spotted Hughes was known for drug trafficking; nor was there testimony of any recent complaints of drug activity in the area. There was no evidence that Hughes was known to the officers, or that they had any information linking him to drug trafficking. Officer Parker's "19 years of police experience" led him to believe that Hughes was engaged in drug activity. However, "A hunch or suspicion of illegal activity or transactions is insufficient to establish reasonable grounds to stop a person." Williams, 621 So.2d at 201. Hence, the totality of the circumstances did not justify stopping Hughes; the State failed to elicit adequate information from Officer Parker for a finding of reasonable suspicion to support the detention of Hughes.

The Search
Even if it were found that the stop was justified by the evidence presented by the State, the testimony does not establish that Officer Parker had any particularized ground to frisk Hughes.
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, pursuant to C.Cr.P. art. 215.1 A, and reasonably suspects he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1 B; State v. Curtis, 96-1408, pp. 2-3 (La.App. 4th Cir.10/2/96), 681 So.2d 1287, 1289. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Williams, 98-3059, p. 4 (La.App. 4th Cir.3/3/99), 729 So.2d 142, 144 quoting State v. Smith, 94-1502, p. 5 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956 (La.App. 4th Cir.3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
While it is true that an officer is never justified in conducting a pat down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.

State v. Hunter, 375 So.2d 99, 101-102 (La.1979) (final citation omitted).
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect [sic] that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit the *428 criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
96-0956 at pp. 7-8, 691 So.2d at 1299.
In this case, there was no evidence presented at the hearing on the motion to suppress concerning whether Officer Parker believed Hughes was armed. Officer Parker testified: "We went in the store, detained [the defendant]. At the time a pat-down search was conducted on him. And the plastic bag was found in his right front pocket." Officer Parker did not allude to any circumstances, which would have led him to believe he was in danger or that Hughes was armed. The State concedes that it failed to elicit supporting testimony concerning the officer's actions. However, the State suggests that "the trial court presumed the officer conducted a pat-down for weapons as a result of his concern for his own and his partner's safety." State v. Denis, supra, requires that the officer not only articulate his suspicion, but also explain its basis.[1] Considering the lack of any evidence to justify a reasonable suspicion by Officer Parker that Hughes either posed a danger to him or others, or was armed, the officer was not justified in frisking Hughes.

The Seizure
Even if the State had shown a basis for the frisk, the State failed to show that the cocaine was discovered pursuant to the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. In State v. Denis, 96-0956 pp. 8-9, 691 So.2d at 1300, this court set forth the requirements of the "plain feel" exception:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La.App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their *429 drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat-down was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir.11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
Officer Parker's suppression hearing testimony does not explain what, if anything, he felt in Hughes' pocket that was immediately identifiable as contraband. Officer Parker offered no basis for his suspicion that Hughes' pocket contained illegal drugs. The seizure of the bag exceeded the scope of the frisk and cannot be justified under the "plain feel" exception to the warrant requirement.

CONCLUSION
Accordingly, Hughes' conviction and sentence are reversed, and this matter is remanded to the trial court for further action consistent with this opinion.
CONVICTION AND SENTENCE REVERSED AND REMANDED.
BYRNES, J., dissenting with reasons.
BYRNES, J., dissents with reasons.
I respectfully dissent based on my conclusion that the trial court properly denied the defendant Richard Hughes' motion to suppress.
In the present case the State avers that the trial court erred in ruling that the officers did not have reasonable suspicion to justify an investigatory stop pursuant to La.C.Cr.P. art. 215.1. The property was seized without a prior unlawful intrusion into a citizen's right to be free from governmental interference.

Investigatory Stop
A reviewing court must take into account the "totality of the circumstances whole picture," giving deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In State v. Huntley, supra, 708 So.2d at 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification...." Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer "that might well elude an untrained person." Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed *430 in the field of law enforcement." Id. [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture. In other words, the officers need not articulate reasons justifying a stop; however, articulable facts must be found or determined from the record under the totality of circumstances.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), in which the police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.
State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the defendant's unprovoked headlong flight coupled with his presence in an area of heavy narcotics trafficking was sufficient under the Fourth Amendment to justify a Terry investigative stop.
See also State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, and State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549; State v. Neal, 98-2751 (La.12/18/98), 731 So.2d 274; and State v. Adams, 98-1890, p. 3 (La.App. 4 Cir. 12/2/99), 748 So.2d 510. In these cases, the police had two factors that were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant.
In the present case, Officer Lionel Parker testified that when the police saw Hughes, he was with two other subjects in front of a supermarket. As the police approached in an unmarked car, "we observed Mr. Hughes with a white object, placing it into his left pocket. And then he hastily rushed into the supermarket." When asked, "Now, when you said you saw Mr. Hughes placing a bag into his pocket, did you have a clear view of that?" Officer Parker replied, "Yes, we did." Both officers saw the white object. On cross-examination, the officer agreed that the white object could have been a grocery list, but he believed that it was drugs "[j]ust from my 19 years of police experience." The police report stated that: "Arrested subject [Hughes] was observed exiting Olive St. Supermarket. Subject [Hughes] became startled when he detected the officers['] presence and shoved what appeared to be a white object into his pocket as he darted back into the store." Based on Hughes' furtive reactions, the reasonable conclusion is that Hughes did not place a grocery list into his pocket. Considering the officer's experience, after clearly seeing the white object, it was reasonable for the officers to conclude that the object was drugs. Under the totality of circumstances the officers had two factors to justify a reasonable suspicion to stop the *431 defendant: (1) when Hughes saw the police, they observed that he put something into his pocket that was a white object that the police believed to be contraband; and (2) Hughes hurriedly rushed back into the grocery store. The police had reasonable suspicion and justification for an investigatory stop under the totality of circumstances.
Considering that the officers had reasonable suspicion for an investigatory stop, this case would fall within the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be a weapon or contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.
La.C.Cr.P. art. 215.1 B provides for a limited frisk for weapons during an investigatory stop:
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
"The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In the present case Officer Parker testified that both officers observed Hughes put in his pocket a white object that the officers believed to be drugs. Considering that any person suspected of having drugs is probably armed with a weapon, the officers need not refer to specific particular facts concerning the danger to their safety. Under the totality of the circumstances the whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officers had reasonable justification to justify the pat down of the defendant for weapons.
The officers conducted a pat-down frisk of Hughes. Although the officer did not refer to the feel of the object directly, the officers had just seen the object and they knew exactly where Hughes had placed the white object in his left pocket when Hughes saw the police. Based on their experience, the officers had justifiable reason to believe that Hughes had placed drugs in his pocket before he hurriedly rushed back into the grocery. Under the totality of circumstances, it was reasonable for the officers (who saw the white object before Hughes put it in his pocket) to know exactly where and what to feel for when the pat-down frisk was undertaken. The seizure of the white object that the officers already believed to be drugs was proper.
Under the totality of circumstances, the officers had reasonable suspicion the to make a legal investigatory stop. The officers' inferences from the facts at hand were reasonable. The property was seized without a prior unlawful intrusion into a citizen's right to be free from governmental interference.
Accordingly, I would grant the State's writ application, reverse the trial court's ruling, and deny Hughes' motion to suppress.
NOTES
[1] But see State v. Wartberg, 586 So.2d 627 (La.App. 4th Cir.1991), in which this Court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.