^MICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE

On May 20, 2002 the State filed a bill of information charging the defendant-appellant Jamal Bradley with one count of possession of marijuana with the intent to distribute, a violation of La. R.S. 40:966(A)(1). He entered a not guilty plea at arraignment on May 23, 2002. A motion to suppress and preliminary hearing were held on May 31, 2002 at the conclusion of which the court denied the motion to suppress and found probable cause to sustain the charge. On July 25, 2002 the defendant withdrew his former plea of not guilty and entered a plea of guilty as charged[1] with a reservation of the right to appeal from the denial of his motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The defendant also waived all sentencing delays. The court then sentenced him to serve five years at hard labor.
The State initially filed a multiple bill of information charging the defendant as a second offender. The hearing was set many times, until finally the State | gwithdrew the bill on February 20, 2003. On March 20, 2003 the defendant through counsel filed his written motion for an appeal, which was granted.

STATEMENT OF THE FACTS

Because there was no trial in this matter, the facts are reflected only in the motion hearing transcript. The sole witness was Officer Tommy Mercadel, who *33 stated that he was assigned to the Fifth District Narcotics Division. Officer Mer-cadel testified that, on May 4, 2002, he and fellow officers were conducting an investigation of street level narcotics sales in the 2300 block of St. Anthony Street. They were targeting this area because of citizen complaints of narcotics trafficking and several prior drug arrests. Officer Mercadel set up a surveillance. From a vantage point thirty feet away, he observed the defendant and another man, later identified as Don Nichols, standing in front of a car which was parked in a driveway of an apartment building. A third man approached and spoke to the defendant and Nichols. Officer Mercadel saw the unknown person hand U.S. currency to the defendant. The defendant reached into his left front pants pocket and pulled out a large object. From that object, he removed a smaller object, which he handed to the unknown male. The man then walked away from the defendant and Nichols. His path took him alongside Officer Mercadel’s vehicle, and from only four or five feet away the officer could see that the man was trying to open what appeared to be a small plastic Ziploc bag. Officer Mer-cadel, who had sixteen years experience as a police officer which included almost three hundred drug sales, recognized the bag as common packaging for a five dollar bag of marijuana; however, he could not actually see the contents of the bag.
| .-¡Based on his observations, Officer Mer-cadel believed that he had witnessed a drug sale by the defendant. He notified the three other officers working with him at the time and arranged to return to the scene with them in enforcement vehicles. When Officer Mercadel and his partner pulled up in an unmarked but recognizable police vehicle,. Nichols immediately began running down an alley, and the defendant followed. Officer Mercadel chased the defendant through several yards onto Pauger Street. He ordered the defendant to stop, but the defendant continued running until he ran back around a corner and was confronted by another officer, Detective Charles, and was apprehended.
After the defendant was physically stopped, Officer Mercadel frisked him for weapons; none were found. However, the officer felt a large bulge in the defendant’s left front pocket. As he pushed or squeezed the defendant’s clothing, he could feel objects sliding around. In Officer Mercadel’s opinion, the objects felt like plastic bags such as are used for drug packaging. Officer Mercadel removed a package from the defendant’s pocket which consisted of one bag containing several small Ziploc bags containing marijuana. The defendant was formally arrested.

ERRORS PATENT

A review of the record for errors patent reveal none.

DISCUSSION

In his sole assignment of error the appellant argues that the trial court erred when it denied the motion to suppress the evidence. He argues that the police did not have reasonable suspicion to conduct an investigatory stop. Alternatively, the | ¿appellant argues that the seizure of the marijuana from his pocket resulted from a search which exceeded the permissible scope of a frisk. He also suggests that the officers had placed him under arrest without probable cause before the search of his pocket and seizure of the evidence.
The Louisiana Supreme Court recently discussed investigatory stops in State v. Temple, 2002-1895 (La.9/9/03), 854 So.2d 856.
Although La.C.Cr.P. art. 215.1 permits an officer to stop a citizen in a public place and question him, the right to make such an investigatory stop must be based upon reasonable suspicion that *34 the individual has committed, or is about to commit, an offense. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389, 391 (La.1983). If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). Determining whether “reasonable, articulable suspicion” existed requires weighing all of the circumstances known to the police at the time the stop was made. State v. Williams, 421 So.2d 874, 875 (La.1982).
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an ‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest.
In determining whether the police possessed the requisite “ ‘minimal level of objective justification’ ” for an investigatory stop based on reasonable suspicion of criminal activity, Sokolow, 490 U.S. at 7,109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing | ^courts “must look at the ‘totality of the circumstances’ of each case,” a process which “allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); see also State v. Huntley, 97-0965, p. 1 (La.3/13/98), 708 So.2d 1048.
In reviewing the totality of circumstances, the reputation of an area is an articulable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of reasonable suspicion. State v. Buckley, 426 So.2d 103, 108 (La.1983) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). The assessment by a reviewing court of the cumulative information known to the officers avoids a “divide- and-conquer analysis” by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear “readily susceptible to an innocent explanation.” Arvizu, 534 U.S. at 274,122 S.Ct. at 751.
At any rate, cases have held that the pertinent facts and circumstances must be articulated, i.e., testified to in court by law enforcement officials. For example, in State v. Hughes, 99-2554 (La.App. 4th Cir.5/31/00), 765 So.2d 423, writ denied, 00-1981 (La.6/1/01), 793 So.2d 179, the Fourth Circuit reversed Hughes’s conviction for possession of crack cocaine in a case in which the officers observed Hughes place something white in his pants pocket, then hurry into a nearby grocery. The officers neglected to testify that the area around Olive and General Ogden streets was known for drug-trafficking. One officer conceded that he based his belief *35 that Hughes was involved in drug activity upon his “19 years of experience as a police officer.” The appellate court found this was little more than a hunch, and ruled that the state failed to elicit adequate information from the officers for a finding of reasonable suspicion to support the detention of Hughes. Hughes, 99-2554 at 6, 765 So.2d at 426-27.
State v. Temple, pp. 2-3, 854 So.2d at 859-860.
| (¡In Temple it was notable that the defendant and his companions did not attempt to flee from the police, nor had the police received information about drug activity. In contrast, in State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, the Louisiana Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The Court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, p. 3, 722 So.2d at 989.
In State v. Schaffer, 99-0766 (La.App. 4 Cir. 4/12/00), 767 So.2d 49, this Court found that flight by the defendant and his companion, coupled with the fact that the police officers had observed the two men engaged in activity which was consistent with a drug transaction, gave the officers grounds to stop them. The court noted that the activity which the officers had observed by itself might not have given the officers reasonable suspicion to conduct an investigatory stop. However, the combination of the flight and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion to stop and question the defendant.
In the instant case, Officer Mercadel testified that the area in which the defendant was observed was known for narcotics activity. There had been citizens complaints of ongoing trafficking. The officer observed the defendant engage in an action, an exchange of an object for currency, which was consistent with a drug ^transaction. The object was packaged consistently with marijuana packaging. When the officers approached in an unmarked but identifiable police vehicle, both the defendant and his companion fled. Based on these circumstances, there was reasonable suspicion to stop the defendant.
The appellant attempts to distinguish his case from Benjamin by suggesting that Benjamin fled upon immediate sight of the police, whereas he claims he remained in the area after making the alleged drug sale and did not flee the area until the police returned twenty minutes later. However, there is nothing in the record to indicate that he was aware that he was under surveillance by Officer Mercadel. Thus, the fact that he did not flee the area immediately after engaging in an apparent drug transaction does not indicate he was innocent of illegal activity; rather it simply indicates he did not know the police were targeting the area at the time. As soon as his companion saw the police and fled, the defendant did the same.
In addition to arguing that the police had no right to stop him, the appellant argues that Officer Mercadel’s actions after stopping him exceeded the scope of a *36 frisk for weapons and instead constituted a search which required probable cause.
Officer Mercadel testified that as he frisked the defendant for weapons he felt a bulge in the defendant’s pocket. He described the feel of the bulge more precisely as objects sliding around which in his opinion felt like plastic bags such as are used for drug packaging. In State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, the Supreme Court was faced with a similar situation and applied the “plain feel” exception to the warrant requirement recognized in Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). Quoting Dickerson, the court stated:
|sIf a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
Broussard, pp. 7-8, 816 So.2d at 1289.
In Broussard the officer testified that, based on his knowledge and experience as a narcotics officer, he knew that narcotics and firearms have a known association. The court found that the officer had articulated a sufficient basis for a protective frisk. The officer further stated that during the frisk he felt lumps and heard the crinkle of plastic from Broussard’s pocket, which he knew from his years of experience to be consistent with drug packaging of crack cocaine. The court held that the evidence was obtained by lawful means. Broussard, pp. 7-8, 816 So.2d at 1288-89.
Here, Officer Mercadel testified to his ability, based upon his substantial experience with narcotics arrests, that he recognized the object in the defendant’s pocket to be contraband. Thus, we conclude that, assuming a lawful frisk, the evidence was properly seized.
Nevertheless, as the court noted in Broussard a frisk for weapons is not necessarily authorized in every investigatory stop. Instead a police officer may stop a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, and if the officer reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1(B); State v. Jones, 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. The officer need not be absolutely certain that the person is armed, but the facts must justify a belief that the officer’s safety or that of others is in danger. State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. The question is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony, but whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger, an objective test. State v. Dumas, 2000-0862, pp. 2-3 (La.5/4/01), 786 So.2d 80, 81-82. In Jones, this Court recognized a drug trade-weapons connection, stating:
[I]n many instances, suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La. C.Cr.P. art. 215(B). State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455 (“We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. *37 Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities.”), 99-0244 at p. 7, 756 So.2d at 460, quoting State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142 (officer’s testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La.C.Cr.P. art. 215(B)). (footnote omitted).
Jones at p. 14, 769 So.2d at 38-39.
In the instant case, the evidence established that, based on Officer Mercadel’s observations and experience, the officer witnessed the defendant sell drugs. He saw the apparent buyer of the drugs with a bag consistent with marijuana packaging. The defendant and his companion fled from the police. Officer Mercadel testified that he did a “protective frisk” of the defendant, |inimplying that it was done for the officers’ protection. The officers had a reasonable suspicion that the defendant had just engaged in a drug transaction. Therefore, based on the recognized drug trade-weapons connection, Officer Merca-del was justified in frisking the defendant for weapons. During that lawful frisk, he could feel an object which was immediately apparent to him, based on his experience and observations, to be contraband, and which was thus lawfully seized.
The appellant makes an additional argument that the police actually intended to arrest the defendant when they drove up in the unmarked but readily identifiable police car. In support he cites State v. Fisher 97-1133 (La.9/9/98), 720 So.2d 1179, 1183 (La.1998), where the court stated:
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Allen, 682 So.2d at 719; Moreno, 619 So.2d at 65 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person’s liberty. Allen, 682 So.2d at 719; State v. Simms, 571 So.2d 145, 148 (La.1990).
In Fisher the defendant was handcuffed and placed in a police car; as he was being driven to the police station he confessed to a murder.
In contrast, in this case, there is no evidence that Officer Mercadel and his partner intended to effect an arrest when they drove up to where the defendant was standing, nor did they come upon the defendant and his companion with such a show of force that it could be deemed an arrest. Officer Mercadel indicated that he In and his partner drove up in a car which had no dashboard light or police markings. They were not in uniform. The defendant and his companion immediately fled. There'was no testimony that Officer Mer-cadel and his partner had even exited their vehicle at the time the defendant fled.
Whatever the ultimate intentions of the officers, the record is devoid of evidence that they had effected an arrest of the defendant prior to the lawful frisk and discovery of the drugs in the defendant’s pocket.
*38 The trial court did not err when it denied the defendant’s motion to suppress evidence. This assignment of error has no merit.

CONCLUSION

The appellant’s conviction and sentence are affirmed
AFFIRMED.

. The minute entry states that the defendant pled guilty to distribution of marijuana, but the waiver of rights form and the transcript clearly show that the defendant pled guilty to possession of marijuana with the intent to distribute. When there is a discrepancy between the transcript and the minute entry, the transcript controls. State v. Beard, 547 So.2d 7 (La.App. 4 Cir.1989).