870 So.2d 359 (2004)
STATE of Louisiana
v.
John CRAFT.
No. 2003-KA-1852.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 2004.
*361 Eddie J. Jordan, Jr., District Attorney, Battle Bell, IV, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge Terri F. Love, Judge EDWIN A. LOMBARD).
Judge PATRICIA RIVET MURRAY.
John Craft was arrested and charged with possession of cocaine. The trial court denied his motion to suppress evidence, and he was tried and convicted. On appeal, the sole issue he raises is the trial court's denial of the motion to suppress. Finding no error in that ruling, we affirm Mr. Craft's conviction and sentence.

STATEMENT OF THE CASE
On April 11, 2002, Mr. Craft was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967. On April 22, 2002, he was arraigned and pleaded not guilty. On May 3rd and July 10th, 2002, the trial court held hearings on the motion to suppress at which the arresting officers, New Orleans Police Department Detective Merlin Bush and Officer Jamar Little, testified. On August 1, 2002, the trial court denied the motion to suppress and found probable cause. On August 15, 2002, a six-member jury found Mr. Craft guilty as charged. On March 25, 2003, he was adjudicated a second felony offender. On June 17, 2003, he was sentenced to serve four years at hard labor without benefit of probation or suspension of sentence, given credit for time served, and recommended to the Blue Waters Program, and ordered to be given an opportunity to obtain his GED. This appeal followed.

FACTS
Around 8:40 p.m. on March 19, 2002, Detective Bush and his partner, Officer Little, were patrolling the city in an unmarked police car, a white Crown Victoria. Officer Little was the driver; Detective Bush was the passenger. The windows of *362 the police car were down, as they routinely were, so that the officers could use their sense of hearing and smell while on patrol. When the officers approached the stop sign at the intersection of North Gayoso Street and St. Philip Street, they both smelled the strong aroma of burning marijuana emanating from a gray Lumina, which was parked near the corner. They observed a cloud of smoke coming from the rolled down front, passenger side widow of the Lumina. They also observed that there were two occupants inside the Lumina. The occupants were later identified as Mr. Craft, who was seated in the driver's seat, and his uncle, who was seated in the front passenger seat.
Deciding to investigate, the officers stopped and parked their vehicle close to the Lumina. They exited their vehicle, and, for their safety, the officers ordered both occupants out of the Lumina. The officers then each took a side: Detective Bush took the passenger's side; Officer Little took the driver's side. According to Officer Little, as the driver, Mr. Craft, was exiting the vehicle, Mr. Craft reached his right hand behind his back as if he was placing something in a stuffing motion into his pants. Officer Little believed that Mr. Craft was trying to conceal some type of object or perhaps a weapon. Based on that suspicious movement coupled with the officers' prior observations and smell of marijuana, Officer Little handcuffed Mr. Craft. Officer Little then conducted a patdown of Mr. Craft's outer clothing. In so doing, he felt a loose, hard, rock-like object apparently packaged in plastic on the left side of his leg, closer to his crotch, near his buttocks, that was still partially in his underwear. According to Officer Little, he was certain upon "immediate touch" that it was crack cocaine. He further testified that, based on his experience with narcotics, he knew that the crotch area was a common hiding spot for narcotic dealers. Officer Little still further testified that the plastic packaging of the object was consistent with the packaging of crack cocaine. For that reason, he then arrested Mr. Craft for possession of cocaine.
Officer Little described Mr. Craft's clothing at the time of his arrest as baggy, work-type pants with a loose belt and a work-type shirt. At that point, Officer Little testified that, in order to recover the object that he knew to be crack cocaine, he loosened Mr. Craft's belt and pulled his pants down. When his pants fell down, Officer Little stated that the object fell out and landed on Mr. Craft's pants. Officer Little then verified that the object was crack cocaine. He conducted a further search and recovered $293 in cash in Mr. Craft's pockets.
After recovering the cocaine and the cash and placing Mr. Craft into the rear of the police car, Officer Little searched the Lumina with a flashlight and recovered on both the driver and front passenger seats crumbs of loose vegetable matter. Based on his experience, he believed these loose crumbs were remnants of marijuana from the cigar that the occupants of the Lumina apparently were smoking when the officers arrived. As discussed below, Detective Bush observed the passenger discard that cigar into the grass.
While Officer Little was handling Mr. Craft, Detective Bush contemporaneously was handling the passenger on the other side of the Lumina. Detective Bush testified that he was near the front passenger side of the Lumina handling the passenger while his partner, Officer Little, was near the rear of the Lumina handling Mr. Craft and that he could not see what was happening between Mr. Craft and his partner.
*363 Detective Bush testified that the passenger obeyed the command to exit the vehicle and to place his hands on it. However, while the passenger was doing so, Detective Bush observed him indiscreetly throw what appeared to be a marijuana cigar over the roof of the car into the grass near the sidewalk. Detective Bush communicated orally to his partner that the passenger had discarded the marijuana. Detective Bush opined that because he and his partner smelled the aroma of burning marijuana that the cigar must have been lit. He further opined that when the occupants observed the police car backing up to the Lumina they must have extinguished the lit cigar. He testified that the cigar was small, approximately an inch to an inch and a half in length.
The cocaine, cash, and crumbs of marijuana were seized and introduced into evidence at trial. Also, NOPD Crime Lab Officer Corey Hall, who was stipulated to be an expert in the examination and identification of marijuana and cocaine, testified that the rock-like substance introduced into evidence tested positive for cocaine and the crumbs of vegetable matter introduced into evidence tested positive for marijuana.

ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION
In his sole assignment of error, Mr. Craft argues that the trial court erred when it denied his motion to suppress the evidence. He argues that the officers lacked probable cause to arrest him or reasonable suspicion to frisk him at the time Officer Little patted him down. Alternatively, he argues that even assuming a reasonable suspicion existed, the seizure of the drugs from his groin area resulted from a search that exceeded the permissible scope of a protective pat-down. More precisely, he argues that Officer Little's disrobing him on the public streets of the city went beyond the scope of a permissible protective pat-down.
A trial court's ruling on a motion to suppress is entitled to great weight; this is because the trial court has the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Devore, XXXX-XXXX, p. 6 (La.App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; an appellate court also may consider any pertinent evidence introduced at trial. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
In the instant case, the state asserts two bases in support of the trial court's denial of the motion to suppress. First, the state argues that at the point Officer Little put handcuffs on Mr. Craft a valid arrest for a narcotics violationsmoking marijuana occurred. Citing State v. Wilkens, 364 So.2d 934 (La.1978), the state argues that simply because Mr. Craft was subsequently charged and convicted for a different offensepossession of cocainedoes not mitigate the probable cause finding. We need not decide whether probable cause to arrest was present at that point because we find merit to the state's alternative argument that there was a reasonable suspicion that justified the investigatory stop as well as the pat-down search and that the officer's finding of the cocaine fell within the scope of the "plain feel" exception to the warrant requirement, discussed below.
A protective pat-down search is regulated by La.C.Cr.P. art. 215.1, which codifies *364 Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and which provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
La.C.Cr.P. art. 215.1(A), (B).
"Reasonable suspicion" to stop is something less than probable cause to arrest. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. A reviewing court's assessment of "the cumulative information known to the officers avoids a `divide-and-conquer analysis' by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear `readily susceptible to an innocent explanation.'" State v. Bradley, XXXX-XXXX (La.App. 4 Cir. 1/28/04), 867 So.2d 31 (quoting United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002)).
The jurisprudence, however, requires that the pertinent facts and circumstances be articulated, i.e. testified to by the law enforcement officers in court. Bradley, supra. The law enforcement officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 4 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.
As noted, what prompted the investigatory stop in this case was the officers smelling the aroma of marijuana and observing the smoke coming from the Lumina. A similar situation was presented in State v. Traylor, 31,378 (La.App. 2 Cir. 12/9/98), 723 So.2d 497. In Traylor, supra, the officers were patrolling a college campus when they smelled marijuana coming from a parked car in which the defendant was sitting and which several other men were standing near. The officers investigated and again noticed the smell of marijuana coming from the car. The officers obtained consent to search the car, and found what they believed to be marijuana residue on the floorboard. The officers directed the defendant to place his hands on the car and to empty his pockets. After the defendant acted suspiciously by reaching for his left leg, the officers searched him for weapons and discovered cocaine. In affirming the trial court's finding of probable cause, the court held that "[t]he odor of marijuana emanating from the car allowed the officers to reasonably suspect that [the defendant] was smoking, and thus possessing, marijuana" and that *365 the defendant's suspicious actions justified the weapons search. Traylor, 31,378 at p. 3, 723 So.2d at 499 (emphasis supplied).[1]
Suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La.C.Cr.P. art. 215.1(B). In State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, this court stated that it could "take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities." Fortier, 99-0244 at p. 9, 756 So.2d at 461 (quoting State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292); see also State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144 (officer's testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La.C.Cr.P. art. 215.1(B)); State v. Jones, 99-0861, p. 14 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38-39; Bradley, supra (noting the acknowledged "drug trade-weapons" connection).
Applying these principles, we find that Detective Bush and Officer Little had a reasonable suspicion to justify their investigatory stop of the occupants of the Lumina and Officer Little's protective frisk of Mr. Craft. Both Detective Bush and Officer Little were experienced in narcotics and familiar with the smell of marijuana. They both smelled marijuana emanating from the parked Lumina. The passenger, upon exiting the vehicle, was observed suspiciously discarding what appeared to Detective Bush to be a marijuana cigar into the tall grass on the opposite side of the Lumina. Detective Bush communicated to Officer Little what he had observed. Officer Little observed Mr. Craft, as Mr. Craft exited the Lumina, make a suspicious "stuffing" motion apparently to secrete something inside the backside of his pants. Officer Little testified that he feared that Mr. Craft could have a weapon so he conducted a patdown of Mr. Craft's outer clothing.
The combination of the aroma of marijuana emanating from the Lumina and the cloud of smoke observed coming from the Lumina provided a basis for the officers to reasonably suspect its occupants were smoking, therefore possessing, marijuana. Moreover, the occupants' suspicious movements upon exiting the Lumina coupled with the well-known "drug trade-weapons" connection provided the officers with a basis for being concerned about their safety. Taken together, these factors clearly established the presence of a reasonable suspicion justifying the investigatory stop and the protective pat-down.
Our finding that reasonable suspicion was present, however, does not end our inquiry. As noted, Mr. Craft further argues that even assuming, arguendo, that there was a reasonable suspicion, Officer Little's search exceeded the scope of a protective pat-down. In support, he stresses Officer Little's testimony that he was certain the object he felti.e., a loose, hard, rock-like object packaged possibly in plasticwas cocaine despite that he only *366 patted it, as opposed to manipulating it. He argues that what the officer felt could have been "anything from a piece of candy to a piece of trash and a pebble in a large hip pocket near the groin area." He further argues that this "certainly does not justify pulling a man's pants down on a public street." The state counters that the trial court properly found the "plain feel" exception applicable. We agree.[2]
In State v. Francois, XXXX-XXXX, pp. 7-8 (La.App. 4 Cir. 1/10/01), 778 So.2d 673, 678-79, we summarized the jurisprudence on the "plain feel" exception as follows:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (La.1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La.App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful patdown was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a patdown was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251 pp. 5-6 (La.App. 3d Cir.11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
Francois, XXXX-XXXX at pp. 7-8, 778 So.2d at 678-79 (quoting State v. Denis, 96-0956, pp. 8-9, (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1300). In Francois, the officer testified that he discovered the contraband during a frisk, stating: "[a]s I patted the general area of his buttocks, I felt an object, which I immediately recognized without manipulating it to be a small packet of crack cocaine." Id. There, this Court held that the seizure fell under the "plain feel" exception. Id.
In Bradley, supra, we rejected an argument against applying the "plain feel" exception strikingly similar to Mr. Craft's argument. In that case, the officers stopped the defendant after observing activity consistent with drug transactions. In addition to challenging the validity of the stop, the defendant argued, as Mr. Craft does here, that the officer's search of him exceeded that of a lawful protective pat-down. Finding no merit to that argument, we relied upon the officer's testimony that when he frisked the defendant for weapons, he felt a bulge in the defendant's pocket. The officer more precisely described this bulge as objects sliding around that, based on his experience, felt like the plastic bags commonly used for packaging drugs. Finding the "plain feel" exception applicable, we held that given the officer's *367 testimony that during the lawful frisk he felt an object that was immediately apparent to him, based on his experience and observations, to be drugs, the drugs were lawfully seized.
By analogy, we find that the cocaine was lawfully seized pursuant to the "plain feel" exception. As noted, inside Mr. Craft's left thigh, near his crotch area, Officer Little testified that he felt what he described as a rock-like, hard object packaged in plastic. From his experience in narcotics and his observations, Officer Little testified it was immediately apparent to him that the object he felt was crack cocaine.
Based on Officer Little's testimony, we find three factors support applying the "plain feel" exception here; to wit: the location, texture, and packaging of the cocaine. It was located in an area that Officer Little testified that in his experience, people involved with drugs often place cocainethe crouch area. It had a texture consistent with cocainehard, rock-like texture. Finally, it was packaged consistent with that commonly used to package cocaineplastic. Given these factors, we find the cocaine was lawfully seized pursuant to the "plain feel" exception. We thus find this assignment of error unpersuasive.

DECREE
For the forgoing reasons, Mr. Craft's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] See also Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)(suggesting that the distinctive odor of a substance, perceived by an individual qualified to know the odor, might well be evidence of a persuasive character in determining probable cause for a search). The detection of marijuana by means of smell does not constitute a search, and no reasonable expectation of privacy exists from lawfully positioned officers with inquisitive nostrils. See State v. Coleman, 412 So.2d 532, 535, n. 4 (La.1982).
[2] We note that although the trial court did not give reasons for denying the motion to suppress, the trial court at one of the motion hearings referred to the "plain feel" exception.