MAX N. TOBIAS, JR., Judge.
 

 hOn 7 April 2010, the state filed a bill of information charging Donald Bell, the defendant, with one count of possession of cocaine. Mr. Bell pled not guilty at his arraignment on 9 April 2010. A hearing on his motion to suppress evidence and for a preliminary hearing was held on 12 May
 
 *1055
 
 2010 at which the parties submitted the matter on the police and crime lab reports without offering any further testimony or evidence.
 
 [1]
 
 The court, after hearing oral argument, denied Mr. Bell’s motion to suppress evidence and found probable cause. Mr. Bell, through counsel, gave oral notice of his intent to seek writs. On 11 June 2010, Mr. Bell filed a motion to reconsider the finding of probable cause and the denial of the motion to suppress evidence. The trial court denied the motion, and the defendant again indicated his intention to seek writs. He did in fact file an application for supervisory writs, but the writ application was denied.
 
 State v. Bell,
 
 10-0846, unpub. (La.App. 4 Cir. 6/21/10).
 

 On 18 August 2010, Mr. Bell pled guilty to the charge pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). On 25 August 2010, the defendant appeared before the trial court and was sentenced to serve seven years at hard labor. Additionally, on 25 August 2010, the state filed a multiple bill against Mr. Bell |2alleging him to be a second offender. He pled guilty to the state’s multiple bill. The trial court vacated the original sentence and resen-tenced the defendant to seven years at hard labor.
 

 STATEMENT OF FACTS
 

 As noted above, this matter never came to trial. Neither the state nor the defendant introduced any testimony at the suppression hearing, submitting the matter solely on the basis of the police and crime lab reports.
 
 [2]
 
 The police report’s gist sheet reads as follows:
 

 On Thursday, April 1, 2010 at about 10:09 p.m., Officers David Aranda and Kamil Kuczek, 102B, were on patrol near N. Broad St. at St. Philip St.
 

 While traveling eastbound on North Broad Street the officer’s [sic] observed two unknown black males standing on the front left side of Manchu’s Restaurant located at 2660 St. Philip St. The two unknown black males became very nervous upon the officers presence in the area. Due to the rash of burglaries of Manchu’s Restaurant the officer’s [sic] elected to do a pedestrian check. Officer D. Aranda observed both subjects very nervous. For officer’s safety Officer Aranda conducted a frisk of both subjects and upon frisking arrested subject Mr. Donald Bell, Officer Aranda felt a plastic bag substance in the front left pocket of arrested subject Mr. Bell. Armed with the knowledge that narcotics are usually stored in plastic bags, Officer Aranda removed the plastic bag from the front left pocket of arrested subject Bell, and observed the plastic bag to contain two white yellowish rock like substance which appeared to be that of crack cocaine.
 

 The contraband was tested using preliminary drug test kit which yielded a positive result for the presence of cocaine.
 

 Additionally, the narrative sheet states as follows:
 

 On Thursday, April 1, 2010 at about 10:28 PM, Officers Kamil Kuczek and David Aranda, Unit 102B, |sassigned to the First District, had the occasion to arrest subject Donald Bell, b/m, DOB: 12-25/1959 at the intersection of N. Broad St. and St. Philip St. for posses
 
 *1056
 
 sion of cocaine. The results of the investigation are as follows:
 

 On the above mentioned date and time the officers were traveling east bound on N. Broad St. in their fully marked police vehicle. As the officers approached the intersection of N. Broad and St. Philip streets the officers observed two unknown black males, later identified as Donald Bell and Philip Beard, b/m, DOB: 07-27-1965, standing on the front left side of the Manchu’s Restaurant located at 2660 Saint Philip street. The officers noticed that the business was closed. The two subjects then noticed the officers presence and appeared to become very nervous and turned away from the officers vehicle. Upon observing the subjects suspicious behavior and believing the subjects were about to leave the area the officers elected to exit their vehicle and conduct a check of the subjects.
 

 The officers were also aware of several burglaries of Manchu’s Restaurants
 
 [3]
 
 in the First District. Upon exiting his vehicle Officer Aranda observed subject Bell become very nervous. Both subjects were detained near the police vehicle without incident. The subjects advised the officers that they were just drinking wine and hanging out. As Officer Aranda conducted a pad [sic] down of the subject Bell, Officer Aranda immediately felt a piece of plastic containing a hard object in the left front pocket of subject Bell. Armed with the knowledge that narcotics are usually stored in wrapped plastic Officer Aranda removed the plastic bag from the front left pocket of subject Bell, and discovered the plastic to contain two white yellowish rock like substances which appeared to be crack cocaine. Subject Bell was handcuffed (double-locked) and advised of his rights per Miranda by Officer Aranda.
 

 The officers relocated to the First District Station and conducted a preliminary drug test. A sample of the suspected substance was mixed with an approved preliminary test kit by Officer Aranda in accordance with the manufacturer’s instructions. The sample displayed an immediate and unambiguous colorimetric response suggesting the presence of cocaine. Sergeant Malbrue, Unit 120 C, witnessed the test.
 

 |4Subject Bell was transported to Central Lock-Up and booked accordingly. The other subject Philip Beard was checked through the NOPD Motion Computer and found not to be wanted. The subject was released at the scene after it was determined he was not in violation of any crime.
 

 The officers relocated to Central Evidence and Property where the above listed evidence was logged in under receipt number D0128S10.
 

 As previously noted, the trial court denied Mr. Bell’s motion to suppress and found sufficient probable cause to substantiate the state’s charge. Subsequently, Mr. Bell pled guilty pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 ERRORS PATENT
 

 A review of the record reveals no errors patent.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In his sole assignment of error, Mr. Bell argues that his conviction and sentence should be reversed because the trial court erred when it denied his motion to suppress the evidence. Specifically, he argues that the arresting officers lacked reasonable suspicion to conduct an investigatory
 
 *1057
 
 stop. The defendant contends that the stop was unjustified because it was based on nothing save the fact that he was observed standing in front of a closed restaurant that had previously been burglarized. Further, he asserts his detention was improper because it was based on nothing but the officers’ observation of his nervous behavior and the fact that he and his companion turned away from the officers when they noticed the patrol car. Mr. Bell asserts the officers lacked reasonable suspicion to stop him, and thus the evidence seized pursuant to the stop should have been suppressed. The state argues that an objective evaluation of all the factors known to the officers at the time of the stop indicates that the officers possessed reasonable suspicion to conduct an investigatory stop of Mr. Bell.
 

 |sThe state has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 708 D. A trial court is vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion.
 
 State v. Oliver,
 
 99-1585, p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The trial court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the trial court’s ultimate determination of Fourth Amendment reasonableness is reviewed
 
 de novo. State v. Pham,
 
 01-2199, p. 4 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, an appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts
 
 de novo.” Id.
 
 Where the facts are not in dispute, a reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts.
 
 State v. Anderson,
 
 06-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546.
 

 La.C.Cr.P. art. 215.1 A codifies the U.S. Supreme Court’s authorization of stops based on reasonable suspicion set forth in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
 

 A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
 

 “Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and a reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s |6rights.
 
 State v. Jones,
 
 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial.
 
 State v. Benjamin,
 
 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. In assessing the reasonableness of an investigatory stop, a court must balance the need for the stop against the invasion of privacy that it entails.
 
 State v. Carter,
 
 99-0779, p. 6 (La. App. 4 Cir. 11/15/00), 773 So.2d 268, 274. The totality of the circumstances must be considered in determining whether reasonable suspicion exists.
 
 State v. Oliver,
 
 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articula-ble facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop.
 
 State v. Dennis,
 
 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in determining if his
 
 *1058
 
 inferences from the facts at hand were reasonable.
 
 State v. Hall,
 
 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57. Deference should be given to the experience of the officers who were present at the time of the incident.
 
 State v. Ratliff,
 
 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.
 

 In the case at bar, the police report indicates that the arresting officers first observed the defendant standing at night in front of a closed business that had suffered a rash of burglaries.
 
 [4]
 
 Further, the police report indicates that Mr. Bell and his companion behaved nervously and turned away upon seeing the officers. Contrary to Mr. Bell’s assertion, we find that the officers articulated a rational basis for conducting an investigatory stop of Mr. Bell and the stop was legal.
 
 [5]
 

 |7Our jurisprudence recognizes that the reputation of an area is an articu-lable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion.
 
 State v. Temple,
 
 01-1460, p. 5 (La.App. 4 Cir. 6/19/02), 821 So.2d 738, 741. Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to perform an investigatory stop under La.C.Cr.P. art. 215.1.
 
 Id.
 
 Not surprisingly, an individual’s presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers, has been found sufficient to justify an investigatory stop. See
 
 State v. Taylor,
 
 363 So.2d 699 (La.1978);
 
 State v. White,
 
 27,188 (La.App. 2 Cir. 8/23/95), 660 So.2d 515;
 
 State v. Hill,
 
 01-1372 (La.App. 5 Cir. 5/15/02), 821 So.2d 79. Under the facts noted in the police report, the officers in the present matter had reasonable suspicion to conduct an investigatory stop.
 

 In
 
 State v. Hall, supra,
 
 we held that investigating officers had reasonable suspicion that the defendant was committing a crime warranting a stop where the officers received citizen complaints of drug activity occurring in front of a particular address. The officers arrived at the address and observed one individual attempting to hand another individual currency. The officer’s experience led him to believe that a drug transaction was occurring; and the individuals became nervous when they saw officers, pulled hands back, and walked away. 99-2887, p. 6, 775 So.2d at 58.
 

 In
 
 State v. Sheehan,
 
 97-2386 (La.App. 4 Cir. 12/9/98), 740 So.2d 127, this court held that police officers had reasonable suspicion to stop a suspect on a street |scorner and conduct a pat down search of suspect for weapons, when: (1) the officers received a tip from an anonymous informant that a group of persons on the street corner was selling narcotics; (2) one individual at the corner fled when he saw the police; and (3) the corner was at a location known as a high drug trafficking area.
 

 Further, in
 
 State v. Short,
 
 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549, we held that a police officer had reasonable suspicion to believe that a defendant was engaging in illegal activity that warranted an investigatory stop of the defendant, where the officer observed the defendant and others “dart” into a club at the officer’s approach in area known for criminal activi
 
 *1059
 
 ty and drug trafficking and then leave through the club’s rear door.
 

 The police report in the case before us indicates that after having decided to conduct an investigatory stop, the officers elected to conduct a pat-down search of Mr. Bell.
 
 [6]
 
 If a law enforcement officer has legally stopped a person pursuant to La.C.Cr.P. art. 215.1 A, the officer may frisk the outer clothing of the person if the officer reasonably suspects that he is in danger. La.C.Cr.P. art. 215.1 B. Additionally, if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person.
 
 Id.
 
 To frisk a person who has been detained, one must have some basis for fear for one’s safety or fear that the suspect is armed.
 
 State v. James,
 
 07-1104, p. 6 (La. App. 4 Cir. 3/5/08), 980 So.2d 750, 754. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.”
 
 Id.
 

 |9Our jurisprudence recognizes that the reasonableness of a frisk conducted as part of an otherwise lawful investigatory stop is governed by an objective standard. The Louisiana Supreme Court has observed that, in evaluating an officer’s reasonableness, “[t]he relevant question is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing.”
 
 State v. Dumas,
 
 00-0862, pp. 2-3 (La.5/4/01), 786 So.2d 80, 81-82. Instead, the standard of an officer’s reasonableness to frisk a detainee is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In evaluating the reasonableness of the frisk, a court will consider whether an officer’s frisk is “reasonably related in scope to the circumstances which justified the interference in the first place.”
 
 Terry,
 
 392 U.S. at 20, 88 S.Ct. 1868. For Fourth Amendment purposes, the line drawn here is based upon an objective basis, and that line may only be crossed by a police officer when that objective basis is clear.
 
 State v. Francis,
 
 10-1149 (La.App. 4 Cir. 2/16/11), 60 So.3d 703.
 

 In
 
 State v. Sims,
 
 02-2208, p. 3 (La.6/27/03), 851 So.2d 1039, 1043-44, the Court explained that the “officer’s suspicion that he is in danger is not reasonable unless the officer can point to particular facts which led him to believe that the individual was armed and dangerous.” Additionally, “the officer need not establish that it was more probable than not that the detained individual was armed and dangerous.”
 
 Id.
 
 Rather, the Court explained, “it is sufficient that the officer establish a “substantial possibility” of danger.”
 
 Id.
 
 To determine the lawfulness of an officer’s frisk of a suspect, “courts must give due weight, not to an officer’s inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable 1 ininferences which he is entitled to draw from the facts in light of his experience.”
 
 Id.
 

 In the present case, the police report indicates that the officers observed the defendant and his friend
 
 at night, standing in front of a business that had suffered a series of burglaries.
 
 Further, the police report indicates that Mr. Bell and his friend
 
 appeared nervous
 
 and
 
 turned away
 
 from the officers upon seeing the patrol ear. We find that the officers were justified in conducting a pat-down
 
 *1060
 
 search of Mr. Bell under the totality of circumstances.
 

 During the course of the pat-down search, Officer Aranda felt a plastic bag containing a hard object in Mr. Bell’s front left pocket. The police report indicates that Officer Aranda took the plastic object from Mr. Bell’s pocket because he knew that narcotics are usually stored in plastic bags.
 

 In
 
 State v. Craft,
 
 03-1852, p. 10 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 366, we summarized the jurisprudence of the “plain feel” exception as follows:
 

 [E]vidence discovered during a lawful investigatory frisk may be seized under the “plain feel” exception to the warrant requirement, as explained in
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the “plain view” doctrine requires that an object’s incriminating character be immediately obvious when seen, the “plain feel” doctrine requires the tactile discovery of “an object whose contour or mass makes its identity immediately apparent.”
 
 Dickerson
 
 at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in
 
 State v. Parker,
 
 622 So.2d 791 (La.App. 4th Cir.), writ, denied, 627 So.2d 660 (La.1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the “plain feel” exception because there was no evidence that a matchbox’s shape was identifiable as contraband. In contrast, in
 
 State v. Stevens,
 
 95-501 (La.App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers Incarried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat-down was immediately identifiable as a “crack pipe,” suppression of the cocaine residue contained within the pipe is not required.
 
 State v. Lavigne,
 
 95-0204, at p. 9 [ (La.App. 4th Cir.5/22/96) ], 675 So.2d [771] at 778;
 
 State v. Livings,
 
 95-251, pp. 5-6 (La.App. 3d Cir.11/15/95), 664 So.2d 729, 733, writ, denied, 95-2906 (La.2/28/96), 668 So.2d 367.
 

 In
 
 State v. Francois,
 
 00-1039 (La.App. 4 Cir. 1/10/01), 778 So.2d 673, the officers decided to conduct a pat-down frisk of the defendant under circumstances similar to the present matter. Specifically, the frisking officer testified: “As we approached him-as he was now at the-what would be the uptown lake corner of the intersection with another subject-he appeared real nervous, fidgety. Because of the time of night, the reputation of the area, how nervous he appeared, I decided to conduct a protective pat-down search for my own protection.”
 
 Id.,
 
 p. 5, 778 So.2d at 677. Further, the investigating officer testified that he discovered the contraband during a frisk, stating: “[a]s I patted the general area of his buttocks, I felt an object, which I immediately recognized without manipulating it to be a small packet of crack cocaine.” This Court held that the seizure fell under the “plain feel” exception.
 
 Id.
 

 In
 
 State v. Bradley,
 
 03-1518 (La.App. 4 Cir. 1/28/04), 867 So.2d 31, the officers stopped a defendant after observing activity consistent with drug transactions. In addition to challenging the validity of the stop, the defendant argued that the officer’s search of him exceeded that of a lawful protective pat-down. Finding no merit to that argument, we relied upon the officer’s testimony that when he frisked the defendant for weapons, he felt a bulge in the defendant’s pocket. The officer more precisely described this bulge as objects sliding around that, based on his experience, felt like the plastic bags com
 
 *1061
 
 monly used for 112packaging drugs. Finding the “plain feel” exception applicable, this court held that given the officer’s testimony that during the lawful frisk he felt an object that was immediately apparent to him, based on his experience and observations, to be drugs; the drugs were lawfully seized.
 

 We find that the crack cocaine was lawfully seized from Mr. Bell pursuant to the “plain feel” exception. Officer Aranda testified that he felt what he described as a hard object inside of a plastic substance. The police report provides that Officer Ar-anda knew that narcotics are often stored in wrapped plastic. Thus, Officer Aranda took the plastic substance from Mr. Bell’s pocket because he suspected that it contained narcotics. It is clear from the police report that Officer Aranda’s removal of the bag was based on his knowledge that narcotics are usually stored in plastic bags. Accordingly, the trial court did not err when it denied the defendant’s motion to suppress. The assignment of error is without merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the conviction and sentence of Donald Bell.
 

 AFFIRMED.
 

 [1]
 

 . The arresting police officers failed to appear for the hearing.
 

 [2]
 

 . The reports are hearsay under La. C.E. art. 803(8)(b) and would be inadmissible in evidence but for the agreement of counsel as to admissibility. Hearsay evidence is admissible at a probable cause hearing. Live testimony at a hearings addressing probable cause is preferred.
 

 [3]
 

 . We note the reference to multiple Machu’s Restaurants, where other parts of the narrative and the gist refer to a singular Manchu's Restaurant.
 

 [4]
 

 . Cf. footnote 3 above.
 

 [5]
 

 . Mr. Bell cites to several cases wherein courts found investigatory stops unreasonable. He makes much of the fact that the officers did not observe him engaging in any criminal activity. However, the record shows that the property at which Mr. Bell was stopped had suffered a series of burglaries. Thus, none of Mr. Bell's cited cases is on point factually with the case at bar.
 

 [6]
 

 . Mr. Bell does not challenge the legality of the pat-down search or the subsequent plain feel seizure of the crack cocaine from his pocket.