JAMES F. McKAY III, Chief Judge.
hThe defendant appeals the judgment of the trial court denying his motion to suppress the evidence. After a review of the record before us, we find that the trial court erred in denying Brad Candebat’s motion to suppress the evidence. Therefore, we reverse the trial court’s judgment, grant the defendant’s motion to suppress the evidence, and vacate his guilty plea and sentence.
STATEMENT OF CASE
The State filed a bill of information charging the defendant, Brad Candebat, with possession of a controlled dangerous substance, amphetamine, a violation of La. R.S. 40:967. On June 15, 2011, the defendant was arraigned and pleaded not guilty. On August 4, 2011, the defendant filed a motion for discovery, as well as a motion to suppress the evidence and motion for a preliminary hearing. On October 10, 2011, the defendant waived his right to a jury trial and elected a bench trial. On December 12, 2011, a motions hearing was continued to the trial date, April 18, 2012. On that date the motions hearing and the trial were continued to August 27, 2012. On August 23, 2012, the defendant filed a memorandum in support of the motion to suppress the evidence. On August 27, 2012, a hearing on the motions was held; the trial court denied the motion to suppress the evidence and set trial on |2F ebruary 19, 2013. The defendant sought supervisory review, and this Court denied the writ. State v. Candebat, 2012-K-1542, unpub. (La.App. 4 Cir. 2/7/13). On February 19, 2013, the defendant withdrew his not guilty plea and pleaded guilty under State v. Crosby, 338 So.2d 584 (La.1976). The defendant waived delays, and the trial court sentenced him to two years in the Department of Corrections, suspended, and two years of probation with the special condition that after the completion of one year of active probation, the second year of probation would be converted to inactive probation.
STATEMENT OF FACT
At the August 27, 2012 motion to suppress hearing, Agent Christopher En-cardes testified that on February 20, 2012, he resigned for personal reasons from being a St. Bernard Sheriffs Office Narcotics Agent after six and one-half years. He was working for the City Park Police Department at the time of the hearing. However, on March 16, 2011, he was a narcotics agent; he had been part of the narcotics street crimes unit for two years. He stated that in 2011 he participated in roughly 200 narcotics arrests; in 2010 he was involved in about 180 narcotics arrests. He was in a one-man car when he made a traffic stop, but his partner, Agent Scott Maitrejean, showed up toward the end. The agent testified: “I observed a red vehicle that Mr. Candebát was driving. Mr. Candebat wasn’t wearing a seatbelt, had a cracked windshield. Conducted [sic] a traffic stop on Mr. Candebat, in a high crime and drug activity area.” The agent explained that the number of narcotics arrests made in that area was the basis for describing it as a high drug activity area; he had been personally involved in a number of those arrests.
Agent Encardes stated:
|SI conducted a traffic stop on Mr. Candebat, at which time I instructed *306 him to [sic] the rear of the vehicle with his driver’s license, registration and proof of insurance. Mr. Candebat complied exiting the vehicle, coming to the rear. Mr. Candebat was overly nervous. Wouldn’t [sic] make eye contact. Continued to put his hands in his pockets on several occasions after being asked not to at which time I asked Mr. Candebat to place his hands on the rear of the vehicle so Agent Encardes [the agent testifying] can conduct a pat-down for officer safety.
The agent said that the defendant was “just completely, overly nervous from [sic] someone on a regular traffic stop.” The agent said that overly nervous subjects were usually involved in narcotics arrests.
Agent Encardes testified that it was about 7:00 p.m., and he asked the defendant to put his hands on the car for officer safety because he was alone, and it was a high crime/high drug trafficking area. Agent Encardes testified that he began to conduct a pat-down of the defendant; he was looking for weapons. He said: “During the pat-down in Mr. Candebat’s coin pocket I felt what was a small hard rock-like substance.” He was “unsure” of which pocket, but thought it was the left pocket. The agent said that he was looking for weapons; he patted the defendant down for safety reasons. He explained that he felt a “small hard rocklike substance consistent with the possibility of crack cocaine.” The agent noted that he had felt such things during pat-downs, and the substance was usually crack cocaine. Noting the agent’s experience, the ADA asked: “You thought it might be contraband?” Agent Encardes replied: “Correct.” Agent Encardes said that when he removed the object, “[i]t was a small pill.” While he was attempting to identify the pill using drugs.com, the defendant stated that he did not have a prescription for the medication. Agent Encardes testified that he then advised the defendant of his Miranda rights and placed him in handcuffs. According to the Louisiana State Police Crime Lab, the pill was twenty milligrams of amphetamine, a controlled |4dangerous substance. The agent said that the defendant was charged with the illegal possession of a controlled dangerous substance, as well as the traffic violations for the cracked windshield and the failure to use the seatbelt.
On cross-examination Agent Encardes stated that he was not familiar with the defendant before the traffic stop that night. The agent said that seconds elapsed between the actual stop and the pat-down. When defense counsel asked what facts formed the basis for the agent to decide to pat-down the defendant, he replied: “From Mr. Candebat’s actions.” He conceded that he had no specific information that the defendant was armed or dangerous. The agent admitted that he observed no bulges in the defendant’s jeans. Defense counsel reiterated that the agent had testified that he felt a hard rocklike substance in the defendant’s top coin pocket. Counsel then asked the agent to read his report in which he had stated: “During the pat-down Agent Encardes immediately felt a capsule shaped pill in Candebat’s top coin pocket.” When he was asked if he felt a pill, the agent replied: “It was hard.” Counsel asked: “Capsule pill?” The agent answered: “A hard substance.” Counsel then asked: “A hard substance which could be a number of things, not necessarily a pill?” Agent Encardes replied: “Correct.” Counsel then asked: “But in your report you indicate that you immediately felt a capsule pill; is that correct?” The agent responded: ‘Tes, ma’am.” When counsel asked why the agent’s testimony was not the same as what he wrote in his report, Agent Encardes replied: “It was a hard sub *307 stance.” When counsel questioned what the agent had said in the report and what he testified at the hearing, the agent said: “Well, if you put the pill in a pocket [sic] it’s still a hard substance.” He continued to say that it was a hard substance; he admitted that he did not think that it was a weapon. When he was asked if he believed it was narcotics, he answered: “Correct.”
|fiOn further cross-examination Agent Encardes testified that he decided to remove the object from the defendant’s coin pocket based on the defendant’s actions, the high crime and drug trafficking area, and his past experience making narcotics arrests. When counsel asked him to explain what actions by the defendant prompted that action, the agent stated: “The several times I’ve asked him not to place his hands in his pockets, which he continuously to do [sic]. His [sic] overly nervous, not making eye contact, being jittery when he spoke.” When questioned as to why he waited until after that last time he put his hands back into his pockets, the agent answered: “Because the very last time he made me fear for my safety. That’s why I did it the very last time.” He said he removed the object for his safety. When he was asked if it was not until he removed the pill that he determined what substance was in the defendant’s pocket, he replied: “Correct.” Counsel asked: “The hard substance, were you certain that it was narcotics?” The agent responded: “No, ma’am.” Counsel then asked: “During the pat-down, were you certain that it was narcotics?” Agent Encardes replied: “No, ma’am, I wasn’t.” Defense counsel asked: “Could it have been something else?” The agent answered: “Yes, ma’am.”
On redirect examination Agent En-cardes stated that he patted down the defendant for officer safety. He agreed that he had done so many times before, and he had felt hard objects during pat-downs.
ERRORS PATENT
The record has been reviewed, and there are no errors patent.
ASSIGNMENT OF ERROR NUMBERS 1 and 2
The defendant argues that the evidence was seized pursuant to an illegal frisk and subsequent illegal search. He claims that the agent had no reason to |fibelieve that he was armed or dangerous. He contends that a lawful detention does not automatically allow an officer to pat down a subject being detained. The defendant argues that the agent had no basis to reasonably believe that his safety or that of others was in danger in order to justify the frisk, and the agent based his decision to conduct a pat-down on the defendant’s nervous behavior. He asserts that nervousness alone cannot justify a frisk, and there was no reason to believe that he was armed and dangerous. The defendant argues that the “plain feel” exception of Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), is applicable because it was not immediately apparent to the agent that the pill was contraband.
In brief, the State argues that the traffic stop was a legal stop. While the agent was issuing the traffic citation, Agent Encardes observed the defendant’s nervous behavior; he put his hands into his pockets three or four times after he had been asked not to do so, and he made no eye contact with the agent. The State contends that the defendant’s very nervous behavior coupled with the fact that he continued to put his hands into his pockets justified the frisk after the agent had ordered the defendant to place his hands on the car. The State argues that the narcotics agent felt a small hard substance, *308 which, based on his years of experience, felt like a small rock of cocaine, but it turned out to be a 20 mg. amphetamine pill, which the agent seized.
LAW AND ANALYSIS
In State v. Wells, 2008-2262, pp. 4-5 (La.7/6/10), 45 So.3d 577, 580-81, the Supreme Court set out the standard of review relating to a trial court’s ruling on a motion to suppress:
17This court has recently restated the general rule that appellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 09-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751, citing State v. Hampton, 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. Id. A “trial judge’s ruling [on a fact question], based on conclusions of credibility and weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling.” State v. Bourque, 622 So.2d 198, 222 (La.1993).
The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. LSAC. Cr.P. art. 703(D). A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. Hunt, 09-1589 at 7, 25 So.3d at 752.
In State v. Anderson, 2006-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546, this Court stated:
The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the district court’s ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 2001-2199 (La.App.1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo.” Id. (citation omitted). “Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts.” Id. (citation omitted).
In State v. Norals, 2010-0293, pp. 4-5 (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 910, this Court set out the pertinent law:
“Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference.
|sAn individual’s constitutional protections from unreasonable searches and seizures are triggered during an investigative traffic stop. United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The law provides that the stopping of a vehicle and its occupants constitute a seizure under the law. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). When an officer observes what he objectively believes is a traffic offense, the decision to stop the *309 vehicle is reasonable, regardless of the officer’s subjective motivation. Whren v. United States, 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 1772, 1774, 135 L.Ed.2d 89 (1996); State v. Waters, 00-0356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056; State v. Landry, 98-0188, p. 2 (La.01/20/99), 729 So.2d 1019, 1020....
After a legal stop, a frisk must also be justified. In State v. Marzett, 2009-1080, p. 6 (La.App. 4 Cir.6/9/10), 40 So.3d 1204,1208, this Court stated:
Once a valid stop is made “and [the stopping officer] reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.” La.C.Cr.P. art. 215.1(B). To frisk a detainee, there must be some basis for a fear of safety or a fear the suspect is armed. State v. James, 2007-1104, p. 6 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 754. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” Id., quoting State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
See also State v. Dumas, 2000-0862, pp. 2-3 (La.5/4/01), 786 So.2d 80, 81-82.
In State v. Simpson, 2011-0370, p. 17 (La.App. 4 Cir. 10/26/11), 77 So.3d 445, 454, writ denied, 2011-2568 (La.12/14/11), 76 So.3d 1185, quoting State v. Boyer, 2007-0476, p. 22 (La.10/16/07), 967 So.2d 458, 472, this Court set out the requirements of the “plain feel” exception:
In Minnesota v. Dickerson, 508 U.S. 366, 371, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993), the Supreme Court addressed whether nonthreatening contraband detected through the sense of touch during a Terry patdown may be admitted into evidence. Analogizing to the “plain view” doctrine, ... the Dickerson Court held if a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; its warrantless seizure 19is justified by the same practical considerations that inhere in the plain-view context. Dickerson, 508 U.S. at 375-76,113 S.Ct. at 2136-37.
In Simpson the police officer testified that he observed a square-shaped bulge at the waistband of Simpson’s pants. When the officer frisked Simpson, he felt a “hardened object” in Simpson’s waistband. The officer admitted that the object did not have the shape of a firearm. It was a Crown Royal bag of marijuana packed tightly into a square shape. This Court concluded that the officer’s decision to remove and open the bag under the “plain feel” exception was unjustified; this Court also held that there was no justification for the investigatory stop and the frisk. Simpson, 2011-0370, pp. 17-18, 77 So.3d at 454. See also State v. Banks, 2011-0903, pp. 5-7 (La.App. 4 Cir. 3/21/12), 95 So.3d 1081, 1084-85 (where the officer testified that she did not know what made the bulge in Banks’ pants, and the “plain feel” exception did not apply; however, Banks could have been legally searched incident to arrest for driving without a license; and the court properly denied the motion to suppress the evidence).
In State v. Bell, 2010-1708, (La.App. 4 Cir. 7/20/11), 70 So.3d 1052, writ denied, 2011-1798 (La.1/20/12), 78 So.3d 141, the officer conducted a pat-down or frisk and felt a plastic bag containing a hard object in Bell’s front left pocket. In the police *310 report the officer indicated that he seized the plastic bag because he knew that narcotics are stored in plastic bags. This Court set out the pertinent law and considered the jurisprudence:
In State v. Craft, 03-1852, p. 10 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 366, we summarized the jurisprudence of the “plain feel” exception as follows:
[Ejvidence discovered during a lawful investigatory frisk may be seized under the “plain feel” exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the “plain view” doctrine requires that an object’s incriminating character be immediately obvious when seen, the “plain feel” doctrine requires the tactile discovery of “an object whose contour or mass makes its identity immediately apparent.” Dickerson at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ. denied, 627 So.2d 660 (La.1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the “plain feel” exception because there was no evidence that a matchbox’s shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La.App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat-down was immediately identifiable as a “crack pipe,” suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204, at p. 9 [ (La.App. 4th Cir. 5/22/96) ], 675 So.2d [771] at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir. 11/15/95), 664 So.2d 729, 733, writ. [sic] denied, 95-2906 (La.2/28/96), 668 So.2d 367.
In State v. Francois, 00-1039 (La.App. 4 Cir. 1/10/01), 778 So.2d 673, the officers decided to conduct a pat-down frisk of the defendant under circumstances similar to the present matter. Specifically, the frisking officer testified: “As we approached him-as he was now at the-what would be the uptown lake corner of the intersection with another subject-he appeared real nervous, fidgety. Because of the time of night, the reputation of the area, how nervous he appeared, I decided to conduct a protective pat-down search for my own protection.” Id., p. 5, 778 So.2d at 677. Further, the investigating officer testified that he discovered the contraband during a frisk, stating: “[a]s I patted the general area of his buttocks, I felt an object, which I immediately recognized without manipulating it to be a small packet of crack cocaine.” This Court held that the seizure fell under the “plain feel” exception. Id.
In State v. Bradley, 03-1518 (La.App. 4 Cir. 1/28/04), 867 So.2d 31, the officers stopped a defendant after observing activity consistent with drug transactions. In addition to challenging the validity of the stop, the defendant argued that the officer’s search of him exceeded that of a lawful protective pat-down. Finding no merit to that argument, we relied upon the officer’s testimony that when he frisked |1Tthe defendant for weapons, he felt a bulge in the defendant’s pocket. The officer more precisely described this bulge as objects sliding around that, based on his experience, felt like the plastic bags commonly used for paekag- *311 mg drugs. Finding the “plain feel” exception applicable, this court held that given the officer’s testimony that during the lawful frisk he felt an object that was immediately apparent to him, based on his experience and observations, to be drugs; the drugs were lawfully seized.
We find that the crack cocaine was lawfully seized from Mr. Bell pursuant to the “plain feel” exception. Officer Aranda testified that he felt what he described as a hard object inside of a plastic substance. The police report provides that Officer Aranda knew that narcotics are often stored in wrapped plastic. Thus, Officer Aranda took the plastic substance from Mr. Bell’s pocket because he suspected that it contained narcotics. It is clear from the police report that Officer Aranda’s removal of the bag was based on his knowledge that narcotics are usually stored in plastic bags. Accordingly, the trial court did not err when it denied the appellant’s motion to suppress. The assignment of error is without merit.
Bell, 2010-1708, pp. 10-12, 70 So.3d at 1060-61.
In the present case, in denying the motion to suppress the evidence in this case, the trial court stated:
I think in this case, the officer had a right to stop. Upon the actions that he observed of Mr. Candebat, he has articulated reasonable cause to believe that his safety may be in jeopardy: As recognized by the Supreme Court in numerous cases, officers conducting traffic stops are probably at a greater risk for harm to themselves than at any other time in their duties. More injury or death occurs to police officers then [sic] than in almost anything else they do at traffic stops. So, a pat-down was certainly reasonable in this case based upon the observations that Mr. Encardes testified to. After he had the ability [sic] to pat-down, he observed[1] what he felt could be contraband, and identified [sic], I don’t find the difference between a hard rock substance and a pill because the pill that is not contraband is not normally carried in the manner in which that would be. So, I find no distinction or difference such that I would discount his testimony between now and what was reported in his police report. I believe he had a right to pat-down. Once he observed and felt what he believed to be contraband [sic] he had a right to seize.
112The trial court correctly found that the traffic stop was legal. Agent Encardes legally stopped the defendant’s vehicle for traffic violations (a cracked windshield and failure to wear a seatbelt). However, the agent’s pat-down must be justified by the agent’s fear for his safety or a fear that the subject is armed. Agent Encardes clearly testified that he did not know the defendant and no criminal activity was involved. The agent stated that he did not have reason to believe that the defendant was armed or dangerous. However, the agent testified that he was alone when he made the traffic stop in a high drug trafficking area at 7:00 p.m., and the defendant, who did not make eye contact, was overly nervous and continually putting his hands into his pockets although the agent had asked him repeatedly not to do so. Therefore, Agent Encardes had a reasonable basis for frisking the defendant for weapons under those circumstances. The trial court properly found that the pat- *312 down or frisk for safety reasons was justified.
The application of the “plain feel” exception is more problematic. According to the agent’s testimony at the hearing, during the frisk he felt “a small hard rocklike substance.” The agent stated that a small rocklike substance can be crack cocaine; he removed the object, which turned out to be a small pill. When confronted with his police report in which he indicated that the object felt like a capsule pill, Agent Encardes responded that the object was a hard substance. Agent Encardes testified that a pill in a pocket felt like a hard substance. He admitted that he did not think that it was a weapon; the agent said that he was not certain that the object was narcotics; it could have been something else. The agent admitted that he did not know that the capsule was contraband. The agent did not testify that he felt an object whose contour or mass made its identity apparent to him. The “plain feel” exception is analogized to the plain view exception, which | lsdoes not require an officer to actually know that the object is contraband, but rather only requires that the officer have pi’obable cause to believe that the item in question is contraband. See State v. Norals, 2010-0293, p. 5, 44 So.3d at 910. From the agent’s testimony, it is not clear that the agent had probable cause to believe the object in the defendant’s pocket was contraband. In other cases where the “plain feel” exception has been utilized, police officers have testified that they felt the plastic packaging of marijuana or the hard rocks of crack cocaine in a defendant’s pocket; the contour and mass of the object made its identity immediately apparent.
Here the trial court focused on the ability of Agent Encardes, who had over six years of narcotics experience. The court noted that during the pat-down, the agent touched something in the defendant’s coin pocket in his pants that “he [the agent] felt could be contraband.” The court discounted the difference between the object being a hard rock substance or a capsule pill. The court stated that a pill that is not contraband would not be in someone’s pants pocket. The trial court abused its discretion by finding that the “plain feel” exception applied under the facts of this case and by denying the defendant’s motion to suppress the one amphetamine pill.
CONCLUSION
Therefore, we reverse the trial court’s decision denying the defendant’s motion to suppress evidence, grant the motion to suppress that evidence, and vacate the defendant’s guilty plea and his sentence.
REVERSED.

. Clearly the agent did not "observe” the contraband inside the defendant’s pocket. This appears to be an error, which is repeated in the last sentence.